IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Beverly LeBlanc, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | C/A No. 3:16-577-SVH |
| | ) | |
| Sunset Management, Inc., and Wayne Greene, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| Laressa B. Brantley, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | C/A No.: 3:16-578-SVH |
| | ) | |
| Sunset Management, Inc., and Wayne Greene, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

ORDER

Beverly LeBlanc ("LeBlanc") and Laressa B. Brantley ("Brantley") (collectively "Plaintiffs") sue their former employer, Sunset Management, Inc. ("Sunset"), and their former supervisor, Wayne Greene ("Greene") (collectively "Defendants"). Plaintiffs allege claims of (1) wrongful discharge; (2) sexual harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), (3) and intentional infliction of emotional distress ("IIED"). [ECF No. 1-1]. Pursuant to the

parties' consent to proceed before the undersigned [ECF No. 9] and their request to consolidate [ECF No. 10], the cases were referred to the undersigned for a final order [ECF No. 11] and consolidated for pretrial proceedings [ECF No. 12].

I.   Factual Background

LeBlanc was hired by Sunset in October 2013 as an assistant branch manager in Sunset's Sumter, South Carolina branch. LeBlanc Complaint ¶ 7. When LeBlanc joined the branch, she worked with Greene, the branch manager; Greene's wife, Brenda ("Brenda"), who was an assistant branch manager; and Brenda's sister, Kathy Thompson, another assistant branch manager. LeBlanc Dep. at 41:15-19:1.[1] When Thompson left her position, Sunset hired Brantley in February 2014. Brantley Compl. ¶ 7.

Brantley and LeBlanc both suffered sexual harassment by Greene during their employment at Sunset. LeBlanc Aff. ¶ 5; Brantley Aff. ¶ 5.[2] Both Plaintiffs stated in their

---

[1] Excerpts of LeBlanc's deposition may be found at ECF Nos. 22-2 and 36-1.
[2] Brantley's and LeBlanc's affidavits may be found at ECF Nos. 31-1 and 31-2, respectively. Plaintiffs' brief does not cite to any evidence in the record, save for four pages of Brantley's deposition, which took place over a full business day. Fed. R. Civ. P. 56 requires much more. The affidavits purport to give Plaintiffs' version of the facts of the case, and the brief relies on the affidavits rather than on deposition testimony, despite the fact that it appears at least some of the information addressed in the affidavit was also addressed in Plaintiffs' depositions. Discovery in this case closed on December 15, 2016. [ECF No. 21]. Prior to the close of discovery, Plaintiffs were deposed, at which time they were given the opportunity to state the facts on the record and be subject to cross-examination regarding those facts. Plaintiffs' failure to rely on the record facts in opposing summary judgment violates Fed. R. Civ. P. 56(c)(1)(A), which provides that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." *See also* Fed. R. Civ. P. 56(e) (stating that a party must properly support his assertions of fact and properly address another party's assertions of fact). Consequently, the undersigned disregards Plaintiffs' post-discovery-deadline affidavits in setting forth the factual background in this case, to the extent possible. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th

affidavits that Greene placed his hands on their thighs and ran his hand up their legs. *Id*. at ¶ 6. Greene often pulled Brantley and LeBlanc to him and kissed them on the neck, cheek, and face. *Id*. at ¶ 7. Greene also placed his hand down Brantley's shirt. *Id*. Greene forced Brantley and LeBlanc to model their work clothes and would make lewd comments about their appearance. *Id*. at ¶¶ 8, 9. On one occasion, Greene commented about the shapeliness of LeBlanc's backside while she was wearing a green pantsuit. LeBlanc Aff. ¶ 10. Greene also stated that Brantley's legs went all the way to heaven. Brantley Aff. ¶ 10.

Greene was supervised by James Maas ("Maas"), Sunset's South Carolina regional supervisor. Plaintiffs had regular conflict with Greene and Brenda, about which they regularly complained to Maas. Specifically, Plaintiffs complained about Greene's and Brenda's work habits, management styles, and harsh communication styles. Maas. Aff. ¶ 6–7;[3] Brantley Dep. at 221:12–23.[4] Maas also stated that he reprimanded Greene once when it was reported to him that Greene had told Brantley that her Harley Davidson riding boots looked "butch." Maas Aff. ¶ 15. Maas's reprimand included instructions that Greene not make such comments anymore. *Id*. Maas states that he was not made aware of any additional comments following the reprimand of Greene. Plaintiffs claim they

---

Cir. 1996); *Fuller v. Cnty. of Charleston*, 444 F. Supp. 2d 494, 499 (D.S.C. 2006) (citing *Larken v. Perkins*, 22 F. App'x. 114, *1 (4th Cir. 2001) (noting that the district court properly found a party's "own, self-serving affidavit[s] containing conclusory assertions and unsubstantiated speculation" insufficient to stave off summary judgment)). Out of an abundance of caution, the undersigned has considered the affidavit only as to allegations provided in the complaint that Defendants have not shown to be contradictory.
[3] Maas's affidavit may be found at ECF No. 22-4.
[4] Excerpts of Brantley's deposition may be found at ECF Nos. 22-3 and 31-3.

3

complained to Maas of Greene's sexual harassment in July 2014. LeBlanc Aff. ¶ 12; Brantley Aff. ¶ 13. Maas states Plaintiffs never complained to him about any sexual harassment. Maas Aff. ¶ 14.

In July 2014, Greene required surgery, and he left Brenda in charge of the branch. LeBlanc Dep. 63:25–64:2. On Thursday, July 17, 2014, Brenda and Brantley had a conflict over Brantley's work, and Brenda instructed Brantley to leave. LeBlanc Dep. 186:4–16. When LeBlanc questioned Brenda's decision to instruct Brantley to leave, Brenda told LeBlanc to call Maas. LeBlanc Dep. 63:16–66:20. LeBlanc called Maas, who spoke with Brenda and Brenda resigned on the phone with Maas. Brenda did not report to work the following day, Friday, July 18, when Maas met with Plaintiffs at the branch. LeBlanc Dep. 68:7–19. Maas changed the locks and removed Brenda's name from the bank account and replaced it with Brantley's. *Id*. According to LeBlanc, Maas told Plaintiffs to keep up the good work and informed them that he was leaving for vacation. *Id*. Maas did not return from vacation until July 28, 2014. Maas Aff. ¶ 11.

Unbeknownst to Maas, in the intervening period before he returned from vacation, Lee Knight, Vice President of Sunset, learned of the altercation and Brenda's resignation, met with Plaintiffs, and terminated their employment. LeBlanc Dep. 38:10–18. According to Knight, Sunset accepted Brenda's resignation and decided to staff the Sumter branch with new employees who Sunset hoped could work together as a team. Knight Aff. ¶¶ 10–12. Knight and Maas stated they did not learn of Plaintiff's complaints of sexual harassment until they received notice of their filed charges of discrimination from the EEOC, long after Plaintiffs were no longer employed by Sunset. Knight Aff. ¶

14;[5] Maas Aff. ¶ 16. Knight and Maas state that Maas had no involvement in Knight's decision to terminate Plaintiffs. Knight Aff. ¶ 13; Maas Aff. ¶13. Knight states it was exclusively his own decision to terminate Plaintiffs because the performance of the Sumter branch was "going in the wrong direction" and Plaintiffs had acted "unprofessionally" and not as "team players." Knight Aff. ¶ 10. Plaintiffs also note that termination decision was Knight's and not Maas's. Brantley Dep. 219:4-220:7.

II. Discussion

    A. Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

---

[5] Knight's affidavit may be found at ECF No. 22-5.

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B.  Analysis

1.  Wrongful Discharge

Defendants argue that they are entitled to summary judgment on Plaintiffs' state-law wrongful discharge claims because Plaintiffs have a statutory remedy under Title VII. [ECF No. 22-1 at 6]. Plaintiffs have failed to address Defendants' arguments related to their wrongful discharge claim. "The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action." *Eady v. Veolia Transp. Servs., Inc.*, 609 F. Supp. 2d 540, 560–61 (D.S.C. 2009). Therefore, it appears Plaintiffs have abandoned their wrongful discharge claim and Defendants are entitled to summary judgment. Independently, the court agrees that Defendants have a statutory remedy under Title VII that bars their wrongful discharge claims.

2.  Title VII Claims

As an initial matter, the undersigned does not construe Plaintiffs' Title VII claims as brought against Greene individually. Title VII prohibits discrimination by employers. *See* 42 U.S.C § 2000e–2. Title VII defines "employer" as "a person engaged in an

industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. § 2000e(b). In construing the definition of "employer" under Title VII, it is well-established that Title VII does not impose individual liability on supervisory employees. *See Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998) (holding that supervisors cannot be found liable in their individual capacity under Title VII because they do not fit within the definition of an employer). Therefore, Plaintiffs can only allege their Title VII claims against Sunset.

a. Hostile Work Environment

Plaintiffs assert hostile work environment claims under Title VII. Compl. at ¶¶ 17–18. To establish a prima facie showing of a hostile work environment, a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer. *Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208, 221 (4th Cir. 2016).

Here, Defendants do not directly address Plaintiffs' claims for hostile work environment. However, Plaintiffs' affidavits contain facts, undisputed by Defendants, establishing a prima facie case of hostile work environment sufficient to survive summary judgment. Specifically, Plaintiffs state, and Defendants have not disputed, that Greene: (1) placed his hand on Plaintiffs' thighs and ran his hand up their legs; (2) pulled Plaintiffs close to him and kissed them on the side of their cheeks; (3) forced Plaintiffs to model their clothes for him; (4) and made lewd comments about their appearances.

Brantley and LeBlanc Aff. ¶¶ 6–9. Plaintiffs also state that they repeatedly told Greene to stop. Brantley Aff. ¶ 12; LeBlanc Aff. ¶ 11.

In hostile work environment cases, "[t]he employer is strictly liable for the supervisor's harassing behavior if it culminates in a tangible employment action, but otherwise may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Boyer-Liberto v. Fountainbleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015). Given that neither party has presented arguments as to whether Greene's behavior was imputable to Sunset, the undersigned finds that Defendants have failed to show that they are entitled to summary judgment on Plaintiffs' claims for hostile work environment.

b. Retaliation

Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination or retaliation. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). Absent direct evidence of retaliatory animus, Plaintiffs can prove violations through the burden-shifting framework of *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792 (1973). *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

To prevail under the *McDonnell Douglas* framework, each plaintiff must first establish a prima facie case by showing: (1) that she engaged in protected activity, (2) that her employer took adverse action against her, and (3) that a causal relationship existed between the protected activity and the adverse employment activity. *Price*, 380

F.3d at 212. The burden then shifts to Sunset to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc). If Sunset makes this showing, the burden shifts back to Plaintiffs to rebut Sunset's evidence by demonstrating that its purported non-retaliatory reasons "were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, (2000)).

Assuming without deciding that Plaintiffs have shown that they engaged in a protected activity and suffered adverse employment actions, Plaintiffs have not shown that a causal relationship existed between the protected activity and the adverse employment action. Specifically, Defendants argue that Knight terminated Plaintiffs and he was not aware of their claims of sexual harassment.

Plaintiffs attempt to create an issue of fact by submitting their own affidavits stating that Maas told them that he had informed Knight of their alleged complaints. However, such statements are inadmissible hearsay and cannot be used as evidentiary support to defeat a summary judgment motion. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (holding that summary judgment affidavits cannot be conclusory or based upon hearsay); *Sumter v. Jenny Craig, Inc.*, No. 3:14-CV-4460-CMC-SVH, 2016 WL 3397588, at *3 (D.S.C. June 21, 2016) ("Plaintiff's affidavits supporting her defamation claim contain hearsay statements that cannot be used as evidentiary support in opposition to summary judgment."). Plaintiffs had the opportunity to depose both Maas and Knight, subject them to cross-examination, and either chose not

do so or chose not to present such evidence to the court. Based on the facts before the court, Plaintiffs have not established a prima facie case of retaliation because they have failed to present admissible evidence demonstrating a nexus between their alleged protected activity and their terminations.

3. IIED

a. Claims Against Sunset

With regard to Plaintiffs' IIED claims against Sunset, Defendants argue that the South Carolina Workers' Compensation Act generally provides the exclusive remedy for personal tort injuries. [ECF No. 22-1 at 13–14]. Plaintiffs concede this law as to Sunset. [ECF No. 31 at 6]. Therefore, Sunset is entitled to summary judgment as to Plaintiffs' claims of IIED. *See, e.g., Dickert v. Metro. Life Ins. Co.*, 428 S.E.2d 700, 701 (S.C. 1993) ("[A]n employee's action against a company for intentional infliction of emotional distress and assault and battery caused by the action of another employee are within the scope of the [Workers' Compensation] Act since these actions arise from personal injury."); *Loges v. Mack Trucks, Inc.*, 417 S.E.2d 538, 540 (S.C. 1992) (holding that a claim of intentional infliction of emotional distress was barred by the exclusivity provision of the Workers' Compensation Act); *see also Strickland v. Galloway*, 560 S.E.2d 448 (S.C. Ct. App. 2002) (stating that the exclusivity remedy doctrine confers immunity "not only on the direct employer, but also on co-employees").

b. Claims against Greene

Under South Carolina law, a plaintiff must establish the following elements to recover for the intentional infliction of emotional distress: (1) the defendant intentionally

or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *Hansson v. Scalise Builders of South Carolina*, 650 S.E.2d 68, 70 (S.C. 2007). As explained by the South Carolina Supreme Court in *Hannson*, "the court plays a significant gatekeeping role in analyzing a defendant's motion for summary judgment[]" in order to prevent claims for intentional infliction of emotional distress from becoming a panacea for wounded feelings rather than reprehensible conduct[.]" 650 S.E.2d at 72 (internal quotations and citations omitted). The *Hannson* court noted that a plaintiff alleging an emotional distress claim bears a "heightened standard of proof." *Id*.

In the employment context, mere termination or unpleasant conduct by supervisors does not rise to the level of actionable outrage. *See, e.g., Alonso v. McAllister Towing of Charleston, Inc*., 595 F. Supp. 2d 645, 649–50 (D.S.C. 2009) (dismissing as a matter of law plaintiff's claim for intentional infliction of emotional distress because of termination and noting "having one's employment terminated is a stressful experience, but it can hardly be said to be an act so severe that no reasonable person could be expected to endure it.") (internal quotation omitted); *Shipman v. Glenn*, 443 S.E.2d 921, 922–23 (S.C. Ct. App. 1994) (holding a supervisor's actions of verbally abusing and threatening an employee with cerebral palsy with the loss of her job and ridiculing the employee's speech impediment to the extent the employee was physically ill and had to leave work

early was insufficient to state a claim for intentional infliction of emotional distress); *Wright v. Sparrow*, 381 S.E.2d 503, 505–06 (S.C. Ct. App. 1989) (finding allegations that supervisor built a case to justify firing the plaintiff by loading her with responsibility while stripping her of authority and by changing the manner of performing certain duties and then accusing her of not following directions insufficient as a matter of law to constitute the tort of outrage); *Corder v. Champion Rd. Mach. Int'l Co.*, 324 S.E.2d 79, 81 (S.C. 1984) (holding that plaintiffs' allegation that they were fired in retaliation for exercising their legal rights was insufficient as a matter of law to constitute outrage); *but see McSwain v. Shei*, 402 S.E.2d 890, 891–92 (S.C. 1991) (holding that jury could find outrageous and intolerable the conduct of an employer who forced employee to perform exercises that exposed her incontinence problem to others); *Turner v. ABC Jalousie Co. of N.C.*, 160 S.E.2d 528, 530 (S.C. 1968) (holding plaintiff stated a cause of action where she alleged having suffered a nervous breakdown after defendant had used vile, profane, and abusive language).

Plaintiffs' deposition testimony attributed their depression to the loss of their employment and not to the conduct of Greene, who was on medical leave at the time of Plaintiffs' termination. Specifically, in her deposition, when questioned about why she visited the doctor, LeBlanc responded: "I had been terminated from my job, I was depressed." LeBlanc Dep. 105:15–19. Likewise, Brantley testified that her depression symptoms resulted from the stress of her termination, beginning on the "ride home" the day of her termination and increasing a couple weeks after her termination. Brantley Dep.

182:8–183:8.[6] Based on the record before the court, and mindful of performing the role of gatekeeper as to Plaintiffs' claims of IIED, the court finds Plaintiffs have not alleged conduct that rises to the level of outrage under South Carolina law. *See Hannson,* 650 S.E.2d at 72; *see also Johnson v. Dailey*, 437 S.E.2d 613, 615 (S.C. 1995) (noting the court determines, as a matter of law, whether a plaintiff's complained-of conduct was "so extreme and outrageous it exceed[ed] all possible bounds of decency, and [was] regarded as atrocious and utterly intolerable in a civilized society.") (internal citations omitted).

4.  Damages

Defendants first argue that Plaintiffs cannot establish that they are entitled to damages because they failed to respond to discovery requests about damages, even after an order compelling them to do so. [ECF No. 22-1 at 16]. The undersigned finds that a motion for summary judgment is not the appropriate procedure for obtaining relief related to a party's failure to respond to discovery or to comply with a court order when the parties have continued to litigate the case, including deposing the plaintiffs, in the absence of the discovery response.

---

[6] In their affidavits, Plaintiffs state for the first time that their depression was caused by the alleged sexual harassment. Brantley Aff. ¶18; LeBlanc Aff. ¶¶ 17–19. "It is well recognized that a plaintiff may not avoid summary judgment by submitting an affidavit that conflicts with earlier deposition testimony." *Alba v. Merrill Lynch & Co.*, 198 F. App'x 288, 300 (4th Cir. 2006); *see also Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). Therefore, the undersigned has disregarded the affidavits on any matters for which they contradict Plaintiffs' deposition testimony in the record.

Defendants also argue that Plaintiffs have not shown that they are entitled to punitive damages because they have not shown that Defendants acted "with malice or with reckless indifference to [Plaintiffs'] federally protected rights." 42 U.S.C. § 1981a(b)(1). Because neither party discussed Plaintiffs' hostile work environment claims, the undersigned is without sufficient information to find that Plaintiffs are precluded from recovering punitive damages.

Finally, Defendants argue that Plaintiffs are not entitled to front or back pay based on their failure to mitigate their damages by seeking new employment. Without ruling on the merits of Defendants' argument, the undersigned notes that damages for sexually-hostile work environment are not limited to front and back pay. Therefore, Plaintiffs' alleged failure to mitigate their damages is not dispositive of their claims and does not provide a basis for awarding Defendants summary judgment.

III. Conclusion

For the foregoing reasons, the undersigned grants Defendants' motion for summary judgment as to Plaintiffs' claims for wrongful discharge in violation of public policy, intentional infliction of emotional distress, and retaliation in violation of Title VII. The undersigned denies Defendants' motion for summary judgment as to Plaintiffs' claim of sexually-hostile work environment and will issue a separate order setting a trial date.

IT IS SO ORDERED.

*Shiva V. Hodges*

July 12, 2017
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge